IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE BOARD OF TRUSTEES OF THE INTERNATIONAL UNION OF OPERATING ENGINEERS LOCAL 825 PENSION FUND, OPERATING ENGINEERS LOCAL 825 WELFARE FUND, OPERATING ENGINEERS LOCAL 825 APPRENTICESHIP TRAINING AND RE-TRAINING FUND, OPERATING ENGINEERS LOCAL 825 SUPPLEMENTAL UNEMPLOYMENT BENEFIT FUND, OPERATING ENGINEERS LOCAL 825 SAVINGS FUND, OPERATING ENGINEERS LOCAL 825 ANNUITY FUND | HONORABLE JEROME B. SIMANDLE |
| | Civil Action No. 15-8957 (JBS-KMW) |
| Plaintiffs, | |
| v. | OPINION |
| RIVER FRONT RECYCLING AGGREGATE, LLC, | |
| Defendant. | |

APPEARANCES:

Michael Bauman, Esq.
Vincent M. Giblin, Esq.
PITTA & GIBLIN LLP
120 Broadway, 28th floor
New York, NY 10271
      Attorneys for Plaintiffs

Steven Alan Berkowitz, Esq.
BERKOWITZ & ASSOCIATES, PC
10000 Lincoln Drive East
Marlton, NJ 08053
      Attorney for Defendant

**SIMANDLE, Chief Judge:**

## I.    INTRODUCTION

In this case, Plaintiffs, Trustees of the International Union of Operating Engineers Local 825 Pension, Welfare, Apprenticeship, Supplemental Unemployment Benefit, Savings, and Annuity Funds seek to audit the books and records of Defendant, River Front Recycling Aggregate, LLC, a civil construction contractor, and to collect any unpaid contributions revealed by the audit.  Pending before the Court is Defendant River Front's motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted.  Defendant argues that because it was not a signatory to any of the agreements that would require it to submit to audits, this Court should dismiss Plaintiffs' Complaint.  For the reasons that follow, the Court will deny the Defendant's motion.

## II.   BACKGROUND[1]

Plaintiffs, the Board of Trustees of the International Union of Operating Engineers Local 825 Benefit Funds ("Trustees"), manage multi-employer welfare plans, pension plans, and employee benefit plans within the meaning of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1002(1), (2), (3).  The International Union of Operating Engineers Local 825 is a labor organization.

---

[1] For purposes of the pending motion, the Court accepts as true the version of events set forth in Plaintiffs' Complaint, documents explicitly relied upon in the Complaint, and matters of public record.  See Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014).

As Trustees of the Local 825 Funds, Plaintiffs administer
the union's employee benefit plans, which were established
pursuant to the terms of collective bargaining agreements
between Local 825 and various employers. (Compl. ¶ 5.)
Employers are required to make contributions to the Funds on
behalf of the employees covered by the collective bargaining
agreements. (Id.) The Funds provide pension, health and welfare,
annuity, apprenticeship, re-training, unemployment, and other
benefits to Local 825 employees. (Compl. ¶ 12.)

The dispute at hand arose from an agreement between Local
825 and River Front covering one job in Burlington County, New
Jersey.  According to Plaintiffs' Complaint, Defendant River
Front had been "a party to and bound by" collective bargaining
agreements with Local 825 covering the period from at least
January 1, 2012 through December 31, 2014. (Id., ¶ 9.)  River
Front received a copy of Local 825's standard collective
bargaining agreement and in a separate one-page Job Site
agreement, agreed to "abide by all of the Terms and Conditions
of employment for its Employees, as set forth in the said
Agreement and to pay the Wage Rates for the various
Classifications of Employment as set forth therein and to make
contributions to the [Local 825 Union], various Fringe Benefit
Plans, as further provided in said Agreement." (Id., ¶ 10; see
also Exhibit A to Def's Br. (reproducing the Job Site agreement
between Plaintiffs and Defendants).

Along with the standard collective bargaining agreement described _supra_, Plaintiffs intend to enforce the terms of the Trust Agreements governing the Funds as well as their Employer Contribution Collection Policy ("Collection Policy") against Defendant. (_Id._, ¶ 2.) The Defendant was bound to both the Trust Agreement and the Collection Policy during the period at issue. (_Id._, ¶¶ 13-14.)  Together, these three agreements authorize the Trustees to (1) bring actions to enforce an employer's obligations to make contributions to the Funds, and (2) to audit the books and records of participating employers. (_Id._, ¶¶ 15-16.)  Regarding contributions, the three aforementioned agreements "authorize Plaintiffs to estimate the amount of contributions when an employer fails and/or refuses to produce books and records for audit for a particular time period." (_Id._, ¶ 21.)  Regarding the right to audit, the collective bargaining agreement explicitly provides that the "Funds Trustees will have the right to conduct periodic payroll audits of companies signatory to this Agreement." (_Id._, at ¶ 17.)  Furthermore, Article IV of the Trust Agreement and Section 16 of the Collection Policy provide that an employer must permit a representative of the Trustees to enter its premises during business hours for an audit of its books and records. (_Id._, ¶¶ 18-20.)  Section 16 of the Collection Policy further explains that the purpose of these types of audits "is to determine whether employers are fully, accurately, and timely complying

with their obligation to make contributions to the Funds and to discover any unpaid contribution and interest which the Funds may, thereafter, collect. (Id., ¶ 20.)

On three separate occasions – on or about August 1, September 1, and October 19, 2015 – the Trustee's auditors notified Defendant that it was required to submit an audit for the period from January 1, 2012 through November 24, 2014, and each time, Defendant failed and refused to comply with the request for audit, and instead completely objected to the audit demand. (Id., ¶¶ 29-33.)  Defendant objected to the audits because it alleges that Plaintiffs have no right to audit its books and records, as it was not a signatory to the standard collective bargaining agreement, the Trust Agreement, or the Collection Policy. (Def. Br. at 3, 5.)

Both parties agree that the key document at issue is the October 3, 2012 agreement signed between Local 825 and River Front. (See Exhibit 2 to Def. Br.)  While Plaintiffs interpret this document as binding Defendant as a signatory to the standard collective bargaining agreement with Local 825, as well as the Trust Agreement and the Collection Policy, see Opp'n at 2, Defendant argues that it is not a signatory to any of the agreements except the "very limited Job Site Agreement[] that does not give Plaintiffs the right to audit Defendants' books nor to obtain any unpaid contributions." (Def. Br. at 6-7.)

Plaintiffs filed suit against Defendant on December 30, 2015 seeking injunctive relief requiring Defendants to submit to an audit, as well as judgment in the amount found to be due and owing after the audit. [Docket Item 1.] Defendant filed the instant Motion to Dismiss on March 15, 2016. [Docket Item 6.] The Court will decide this motion without holding oral argument pursuant to Fed. R. Civ. P. 78.

## III. STANDARD OF REVIEW

Pursuant to Rule 8(a)(2), Fed. R. Civ. P., a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Specific facts are not required, and "the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (citations omitted).  While a complaint is not required to contain detailed factual allegations, the plaintiff must provide the "grounds" of his "entitle[ment] to relief", which requires more than mere labels and conclusions. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

A motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that the plaintiff failed to set forth fair notice of what the claim is and the grounds upon which it rests. Id.  A complaint will survive a

motion to dismiss if it contains sufficient factual matter to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. at 678.

**IV.  DISCUSSION**

The Trustees bring this action pursuant to Section 502 of ERISA, 29 U.S.C. § 1132, which allows employee benefit and multiemployer plans, as beneficiaries, to file suit to recover contributions due under the terms of the plan. In its motion to dismiss, Defendant contests all four of Plaintiffs' causes of action on contractual and statutory grounds, arguing that they all are "predicated on [Plaintiffs'] misguided belief that it has a right to audit the books and records of Defendant." (Def. Br. at 3). Applying the unchallenged factual allegations in the Complaint to the tenets of contract law and the requirements of the ERISA demonstrates that the Plaintiffs have stated claims upon which relief could be granted. For the reasons that follow, the Court will deny the Defendant's motion to dismiss.

**A. Count 1 – Unpaid Benefit Fund Contributions**

The Court finds that Plaintiffs have asserted a valid cause of action for violation of Section 515 of ERISA, 29 U.S.C. § 1145. (Compl. Count One.) Plaintiffs allege that Defendant's

7

underreporting and underpaying contributions owed to the Funds
is a breach of the three agreements in violation of Section 515.
(Compl. ¶¶ 35-37.) Section 515 provides:

> Every employer who is obligated to make contributions to a
> multiemployer plan under the terms of the plan or under the
> terms of a collectively bargained agreement shall, to the
> extent not inconsistent with law, make such contributions in
> accordance with the terms and conditions of such plan or such
> agreement. (Id.)

In the present action, the Funds seek to obtain payment of
contributions from River Front that, they allege, should have
been made in accordance with the terms of the standard CBA.  The
one-page Job Site Agreement explicitly requires Defendant "to
make contributions" to Local and permit the Funds to take legal
action to recover delinquent contributions. (Compl. ¶ 10.)
Moreover, "a failure of any Employer to pay required
contributions to the [Funds] . . .  "shall constitute a
violation of [the CBA]." (Standard CBA at 13.)
Plaintiffs now allege River Front has "underreported and
underpaid contributions owed to the Funds." (Compl. ¶ 36.)
Plaintiffs have therefore sufficiently pled that River Front was
contractually obligated, via the Job Site Agreement, to make
contributions to them on behalf of Local 825's employees.

While Defendant attempts to dismiss their obligations to
contribute because their Job Site agreement as "very limited,"
they underestimate the consequences of signing these types of
agreements. (Def. Br. 6.)  Job Site agreements, "by

8

their very operation, must act as 'master agreements' that
supersede all other labor contracts (especially collective
bargaining agreements) bearing on a particular project." Sheet
Metal Workers Intern. Ass'n Local Union No. 27, AFL-CIO v. E.P.
Donnelly, Inc., 673 F. Supp. 2d 313, 327 n. 22 (D.N.J. 2009)
(citing George Harms Const. Co., Inc. v. New Jersey Turnpike
Authority, 137 N.J. 8, 22 (1994)).  Moreover, "if obligations
arising under [Job Site] agreements were unenforceable," the use
of these types of agreements "would be vitiated." Id.  Defendant
signed a contract promising to make contributions to the Funds,
and Plaintiffs allege that they have not followed through with
their promise.  Such a claim, even without specific monetary
amounts, is sufficient to survive a motion to dismiss. See Local
Union No. 98 Intern. Broth. Of Elec. Workers v. LP Herman Co.,
No. 15-0815, 2015 WL 4273375 at *6 (E.D. Pa. Jul. 14, 2015)
(noting that allegations of "specific dollar amounts in the
Complaint" . . . "are not necessary to support" a Section 515
claim regarding unremitted contributions).  Because Defendants
have refused Plaintiffs' demands for an audit, see infra Section
IV.B, at this stage in the litigation, Plaintiffs cannot yet
determine the specific amount of Defendant's unpaid
contributions.

     Furthermore, this Court is mindful that public policy
favors simplified Trustee collection litigation. In Central Pa.
Teamsters Pension Fund v. McCormick Dray Line Inc., 85 F.3d

1098, 1103 (3d Cir. 1996), the Third Circuit emphasized that "Congress's purpose in enacting Section 515 [of ERISA] was to allow multiemployer welfare funds to rely upon the terms of collective bargaining agreements and plans as written, thus 'permitting trustees of plans to recover delinquent contributions efficaciously, and without regard to issues which might arise under labor-management relations law ...' " Id. at 1104 (citations omitted).  Plaintiffs allege that Defendant has not allowed the Trustees to recover delinquent contributions, which, taken as true, would be a violation of Section 515 of ERISA.  Thus, Defendant's motion to dismiss Count I of the Complaint is denied.

### B. Count 2 – Failure to Submit Books and Records for Audit

Next, in Count 2, Plaintiffs argue that Defendant's refusal to submit to an audit not only violates the three agreements, but also violates Sections 107, 209(a) and 515 of ERISA, 29 U.S.C. §§ 1027, 1059(a), and 1145. (Compl. §§ 41–42.) Plaintiffs request injunctive relief requiring the defendant to "present its books and records to the Trustee's auditors for examination." (Compl. ¶ 44; Prayer for Relief ¶ 2.)  Defendant again argues that because it is not a signatory to the any of the three agreements, Plaintiffs have no audit rights under contract law or ERISA. (Def. Br. at 5; Reply Br. at 4.) Defendant further argues that the language of the standard CBA

is clear that only signatories to the CBA are bound by the right
to audit and that Defendant did not sign that particular
agreement.  For the following reasons, the Court holds that the
facts alleged in Plaintiffs' Complaint state plausible claims
under contract law and ERISA under which Plaintiffs would be
entitled assert a claim to obtain an audit of River Front's
books and records.

### 1. Contract Law

Although federal law governs the construction of collective
bargaining agreements, traditional contract principles apply
when not inconsistent with federal labor law. See Teamsters
Indus. Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc.,
989 F.2d 132, 135 (3d Cir. 1993).  Defendant argues that because
it did not sign the standard CBA, which states that the Trustees
may only audit employers "signatory to [the standard CBA],"
Plaintiffs have not stated a plausible audit claim under general
principles of contract law. (Reply Br. at 6.)  While it is true
that audit rights are not explicitly discussed in the one-page
Job Site Agreement, which Defendant endorsed, Defendant
overlooks the doctrine of incorporation by reference.  This
doctrine allows parties to "incorporate contractual terms by
reference to a separate, contemporaneous document . . .
including a separate document which is unsigned." 11 Williston
on Contracts § 30:25 (4th ed.)(May 2016); see also Nova Corp v.
Joseph Stadelmann Elec., Contractors, No. 07-1104, 2008 WL

746672, at *3 (D.N.J. Mar. 18, 2008) ("It is not necessary that the document incorporated be one to which the parties to the underlying contract are signatories."). Incorporation by reference is proper where the underlying contract makes clear reference to a separate document, the identity of the separate document may be ascertained, and incorporation of the document will not result in surprise or hardship." Standard Bent Glass Corp. v. Glassrobots Oy, 333 F.3d 440, 447 (3d Cir. 2003); see also World Fuel Services Trading, DMCC v. Hebei Prince Shipping Co., Ltd., 783 F.3d 507, 519 n.6 (4th Cir. 2015) ("Under general contract principles, where a contract expressly refers to and incorporates another instrument in specific terms which show a clear intent to incorporate that instrument into the contract, both instruments are to be construed together."). However, "in order to uphold the validity of terms incorporated by reference, it must be clear that the parties to the agreement had knowledge of and assented to the incorporated terms." See 11 Williston on Contracts § 30:25 (4th ed.)(May 2016); see also Dakota Foundry, Inc. v. Tromley Indus. Holdings, Inc., 737 F.3d 492, 496 (8th Cir. 2013) (explaining that effectively incorporating documents together does not require "physical attachment" nor "specific language," so long as there is clear evidence of an intent that the incorporated writings are to be made part of the contractual arrangement).

Here, Plaintiffs argue that because the one-page "job site CBA" refers to and incorporates by reference the Independent CBA, River Front is "plainly obligated to all of the terms of the Independent agreement [which includes the right to audit], at least for work performed on this one site." (Opp'n at 2). Plaintiffs also allege that the Trust Agreements "are incorporated by reference into the collective bargaining agreements." (Compl. ¶ 5.)  As the governing law makes clear, the Trustees have properly stated a claim enabling them to enforce Defendant's signed Job Site agreement incorporating the CBA by reference.  Plaintiffs allege not only that Defendant "received a copy of the Union's standard collective bargaining agreement for the period at issue," showing that it had knowledge of the CBA, but also that it exhibited assent because in the signed Job Site agreement, Defendant agreed to "abide by all of the Terms and Conditions of employment for its Employees, as set forth in the [CBA]" (emphasis added). (Compl. ¶ 10.) Courts in this Circuit and in others have found incorporation by reference in similar contexts. See Standard Bent Glass Corp. v. Glassrobots Oy, 333 F.3d 440 at 448 (holding that an arbitration clause was incorporated by reference into the parties' contract); Doug Brady, Inc. v. New Jersey Bldg. Laborers Statewide Funds, 250 F.R.D. 171, 175 (D.N.J. 2008) ("The incorporation of the CBA into the language of the Short Form

Agreement renders the language in the former part of the latter.").

Defendant attempts to minimize the legal effect of its signature of the Job Site agreement as "very limited," but Courts have generally enforced the terms of these agreements. See. e.g., Carpenters Local Union No. 345 Health and Welfare Fund v. W.D. George Const. Co., 792 F.2d 64, 68-69 (6th Cir. 1986) ("[t]ypically, an employer's assent to be bound by a collective bargaining agreement is found in his or her signing of a 'short form agreement.'"). Through the use of such one-page agreements, often called "job site," "participation," "short form," "project," or "me-too" agreements, a smaller, usually independent, contractor agrees to be bound by a collective bargaining agreement negotiated by a union and multi-employer bargaining group representing contractors within a particular jurisdiction and pays contributions according to the terms of such agreements. Id. at 68. The basic purpose of these agreements is to allow these small, independent employers to obtain all the benefits of the standard collective bargaining agreement that is negotiated by the principal employers in the industry without having to participate in the industry negotiations, or to engage in separate negotiations, every few years. See Arizona Laborers Local 395 Health and Welfare Trust Fund v. Conquer Cartage Co., 753 F.2d 1512, 1518-19 (9th Cir. 1985). Importantly, under Third Circuit law, whether or not the

employer signs the Job Site agreement or the standard CBA, there is "no distinction regarding an employer's contractual rights and obligations," and "the distinction between a . . . signatory [to the CBA] and a [Job Site] signatory is without a difference." International Union of Bricklayers and Allied Craftworkers, Local 5 v. Banta Tile & Marble Co., 344 F. App'x 770, 774 (3d Cir. 2009) (citing Berwind Corp. v. Comm'r of Soc. Sec., 307 F.3d 222, 237 (3d Cir. 2002)).

Furthermore, it would be inappropriate for the court to resolve the ambiguity of the term "signatory to this Agreement" in the standard CBA at the current stage of the litigation. Defendant argues that even if the Job Site agreement incorporated the standard CBA, the standard CBA plainly states that the Trustees "will have the right to conduct periodic payroll audits of employers signatory to this Agreement," and since Defendant only signed the one-page agreement and not the standard CBA, it should not have to submit to an audit. (Def. Br. at 5).  On the other hand, Plaintiffs construe that language to include Defendant's signature to the Job Site agreement which incorporates the CBA. (Opp'n at 3).  A contract term is ambiguous if "it is susceptible to reasonable alternative interpretations," and whether a contract term is clear or ambiguous is a question of law for the court. Sanford Inv. Co. v. Ahlstrom Mach. Holdings, Inc., 198 F.3d 415, 421 (3d Cir. 1999).  At this stage, any facts as alleged in the Amended

Complaint and other evidence attached to the pleadings must be construed in the light most favorable to Plaintiffs as the non-moving parties, and any ambiguity in the CBA will be sufficient to overcome a motion to dismiss. See Bat Blue Corp. v. Situs Holdings, LLC, No. 15-8513, 2016 WL 3030814, at *4 (D.N.J. May 26, 2016) ("At the motion to dismiss stage, courts must bear in mind that 'if a contract is ambiguous as applied to a particular set of facts, a court has insufficient data to dismiss a complaint for failure to state [a] claim.'"). As a result, River Front's motion is denied with respect to its arguments concerning the unambiguous meaning of the term "signatory to this Agreement" in the standard CBA.

In conclusion, by pleading sufficient facts demonstrating that Defendant signed the Job Site agreement incorporating the standard CBA by reference, Plaintiffs can survive Defendant's motion to dismiss on contract law grounds.

### 2. ERISA

Plaintiffs' Complaint also sets forth sufficient facts establishing a claim that by refusing to submit to an audit, River Front violated Sections 209 and 515 of ERISA, as well as various provisions of the standard CBA and Trust Agreement. Section 209 of ERISA requires an employer to "maintain records with respect to each of his employees sufficient to determine the benefits due or which may become due to such employees." 29 U.S.C. § 1059(a). These records must be "available for

examination for a period of not less than six years...." 29 U.S.C. § 1027.  Consistent with Section 209 of ERISA, the standard CBA provides that "[t]he Funds Trustees will have the right to conduct periodic payroll audits of employers signatory to this Agreement." (CBA at 13).  Here, Plaintiffs have alleged that River Front, as an employer, was obligated under the CBA that was in effect with the Union during the period of January 1, 2012 through December 31, 2014 to submit remittance reports, pay contributions to the Funds, and provide the Funds' auditors with all pertinent books and records as requested. (Compl. ¶¶ 24-27.)

ERISA provides that, in addition to delinquent contributions, a court shall award "such other legal or equitable relief as the court deems appropriate." 29 U.S.C. 1132(g)(2)(E).  Defendant has failed to submit its records to an audit, (Compl. ¶¶ 30, 32, 34), and an audit constitutes an appropriate form of relief where the amount of the delinquency is not known. See Carpenters' Dist. Council of Greater St. Louis and Vicinity v. Hard Rock Foundations, LLC, No. 13-1549, 2013 WL 6037097, at *2 (E.D. Mo. Nov. 14, 2013).  Furthermore, courts have routinely interpreted this provision to allow audit costs as part of the damages award. See Chi. Plastering Inst. Pension Trust v. Cork Plastering Co., 570 F.3d 890, 902 (7th Cir. 2009) ("This court, among others, have construed 29 U.S.C. 1132(g)(2)(E) to include an award of audit costs."); see also

17

International Union of Operating Eng'gs of Eastern Pennsylvania and Delaware Benefit Pension Fund v. N. Abbonizio Contractors, Inc., 134 F. Supp. 3d 862, 867 (E.D. Pa. 2015); Board of Trustees of Pointers, Cleaners & Caulkers Annuity Fund, Pension Fund, and Welfare Fund v. Harbor Island Contracting, Inc., No. 13-6075, 2015 WL 1245963, at *6 (E.D.N.Y. Mar. 16, 2015)(awarding audit costs to plaintiff under § 1132(g)(2)(E)); Int'l Painters & Allied Trades Union & Indus. Pension Fund v. J.L. Pierce Painting, Inc., 2006 WL 1071535, at *2 (D.D.C. Apr. 21, 2006) (granting the plaintiff access to an employer's books and records under 29 U.S.C. § 1132(g)(2)(E)).

Defendant argues that Plaintiffs have not pled a plausible audit claim under ERISA, but Plaintiffs argue that "ERISA gives the Trustees the inherent authority to audit as a means of marshaling the assets of the Funds in the fiduciary role they hold to the Funds' participants." (Opp'n at 3.)  The Supreme Court has indeed held that a benefit fund trustee has the right to conduct an audit of contributing employers under ERISA. Central States, Southeast and Southwest Areas Pension Fund v. Central Transp., Inc., 472 U.S. 559 (1985).  Trustees are entitled to use "such powers as are necessary or appropriate for the carrying out of all purposes of the trust, and "ERISA clearly assumes that trustees will act to ensure that a plan receives all funds to which it is entitled...." Id. at 559, 571. Here, Plaintiffs assert that an audit of Defendant's payroll

records is necessary in order to determine "whether the Employer is making full and prompt payments of sums required to be paid to the Trust Fund (Compl. ¶ 18.)  As held by the Supreme Court in Central States, this is a valid purpose for payroll compliance audits as such information is necessary to the administration of trusts. Id. at 579.  In essence, fund trustees have a fundamental duty to locate and take control of fund property – "a duty for which the right to audit is crucial." Jaspan v. Glover Bottled Gas Corp., 80 F.3d 38, 41 (2d Cir. 1996) (citations omitted).

The case law after Central States regarding audits is sparse, but the cases that do exist support Plaintiffs' audit claim under ERISA.  In Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp., 920 F.2d 1491 (9th Cir. 1990), which both parties discuss in their briefing, the trustees of a Fund sued an employer, Miramar, to compel Miramar to submit to an audit of its records.  The union and Miramar were parties to a collective bargaining agreement that required Miramar to make contributions to the fund.  The fund was established pursuant to a written trust agreement, which explicitly authorized the fund to audit the records of contributing employers. Id. at 1492.  The collective bargaining agreement was silent as to whether the fund had any right to audit the employers' contributions and it did not incorporate the trust agreement, so Miramar technically was not a signatory to the Trust Agreement.  Nevertheless, the

court had no difficulty holding that the fund had the right to conduct an audit of Miramar's records. Id. at 1494-95.

The Court first noted that "[w]e do not decide whether ERISA confers upon the Fund the right to audit because the Trust Agreement gives the Fund the right to audit [the employer]'s records, despite the fact that the collective bargaining agreement is silent on the issue." Id. at 1493. Rather than rely solely on ERISA, the court looked to the Trust Agreement and held that the right to audit flowed from the Trust Agreement and Miramar's contributions to the fund. This was the case, despite the fact that the collective bargaining agreement was silent on the issue and despite the fact that Miramar was not a signatory to the Trust Agreement. Id. at 1493-94. The Court added that "Miramar and its employees cannot receive the benefits from the Fund yet escape its attendant burdens, in this case, the provision of the Trust Agreement permitting the Trustees to audit an employer's books and records." Id. at 1494. Furthermore, "[o]nce Miramar intended its employees to be covered by the Fund, the Trust Agreement governing the Fund requires Miramar to be bound to its terms. Id.

Defendant attempts to distinguish Miramar because there, the employer signed both the Trust Agreement and CBA (Def. Br. at 8), but its argument is incorrect. Not only was the employer in that case "not a signatory to the Trust Agreement," see Miramar, 920 F.2d at 1994 (emphasis added), but as explained

supra, River Front's signing of the Job Site Agreement
incorporates the CBA by reference, thereby binding River Front
to the CBA provisions on audits.  Also, as explained supra, the
parties disagree as to whether or not Defendant was a signatory
to the standard CBA, or just to the one-page Job Site agreement.

The Eleventh Circuit case Plumbers and Steamfitters Local
No. 150 Pension Fund v. Vertex Constr. Co., 932 F.2d 1443, 1450
(11th Cir. 1991) also supports Plaintiffs' position. There, the
Court found that an employer who made contributions pursuant to
collective bargaining agreement was bound to submit to audit
expressly contemplated by the Trust Agreement, despite the fact
that the collective bargaining agreement did not incorporate the
Trust Agreement.  The Court added that it failed to see how an
employer "can avail itself of the benefits of the Funds without
being subjected to the rules that govern them." Id. at 1451.
The court noted that to rule otherwise "would allow employers
and unions to bargain away the rights and powers of fund
trustees in agreements to which trustees were not a party.  Such
a situation ultimately would result in underfunded plans that
could not pay appropriate benefits to their beneficiaries." Id.
at 1451.  Because the relevant Trust Agreement explicitly
empowered the fund trustees to audit contributing employers, the
employer in Vertex was required to submit to the disputed audit.

In both Miramar and Vertex, without access to relevant
audit information, the respective Trustees could not ensure that

the employers had complied with the contribution requirements to which they had bound themselves under their respective collective bargaining agreements.  Consequently, the "burden" of supplying relevant audit information was necessary to enforce the funding provisions under the collective bargaining agreements. Hanley v. Herrill Bowling Corp., No. 94-4611, 1995 WL 428966, at *3 (S.D.N.Y. Jul. 20, 1995).

In addition, New York State Teamsters Conference Pension & Retirement Fund v. Boening Bros., Inc., 92 F.3d 127 (2d Cir. 1996), further supports Plaintiffs' position, as it invokes the common law fiduciary duties and powers of a trustee in finding a right to audit.  There, the employer refused to submit to a Fund audit because it claimed that it never signed or consented to be bound to the Trust Agreement. Id. at 130.  While the court acknowledged that the employer had not "entered into any explicit contractual undertaking to submit to an audit by the Fund," it nevertheless concluded that the Trustees could audit the employer "pursuant to their fiduciary duties under the Trust Agreement and the common law of trusts as incorporated in ERISA." Id.[2]  Expanding upon the rule of Central States, the court held that "since the Trust Agreement makes no specific

---

[2] Relevant common law duties of a trustee include (1) to preserve and maintain trust assets, (2) to determine both the property that forms the res of the trust and the identity of its beneficiaries, and (3) to notify trust beneficiaries concerning distributions to them. Central States, 472 U.S. at 572.

reference to audits, we believe that <u>Central States</u>' discussion
of an ERISA trustee's duties suggests that an employer audit may
be conducted by ERISA trustees so long as that audit is
'necessary or appropriate to carry out the purposes of the trust
and [is] not forbidden by the terms of the trust.'" <u>Id.</u> at 132–
33. Thus, ERISA empowers audits so long as the Trust Agreement
"does not limit or preclude an audit of [the employer]'s
employment records," <u>id.</u> at 132, and the plan trustee does not
overreach in exercising the power to audit, <u>see id.</u> at 133–34.
The court added that the employer "promised to contribute to the
Fund for its regular employees," and an audit certainly
constitutes a reasonable method by which the Fund may "effect
the collection of such Employer Contributions." <u>Id.</u> at 132.
Furthermore, auditing employers "is also an effective means for
the Fund to administer the fund, <u>Restatement (Second of Trusts)</u>
§ 169 (1959), keep appropriate accounts, <u>id.</u> § 172, take and
keep control of the trust property, <u>id.</u> § 175, and enforce
claims, <u>id.</u> § 177."

   Here, Plaintiffs seek an Order requiring defendant to
comply with the CBA, the Trust Agreement and with ERISA by
submitting to an audit of the relevant books and records.
(Compl. Prayer for Relief ¶ 2.) The Complaint alleges that (1)
River Front has been a party to and bound by the CBAs with Local
825 covering the period from at least January 1, 2012 through
December 31, 2014) (Compl. ¶ 6), (2) that pursuant to the CBAs,

River Front received a copy of the Union's standard CBA and agreed to "abide by all of the Terms and Conditions of employment for its Employees, as set forth in the [standard CBA] . . . and to make contributions to the [Union Funds], as further provided in [the standard CBA]" (id., ¶ 10), and (3) that River Front was bound by the Trust Agreement and the Funds' Collection Policy. (Id., ¶¶ 13-14.) The Complaint also reproduces the relevant audit provisions in the Trust Agreement and the Collection Policy. (Id., ¶¶ 18-21.)

The Court finds that these allegations, when taken as true, are sufficient to state a cause of action under the law set forth in Miramar, Vertex, and Boening. That the Complaint fails to allege that River Front actually signed the standard CBA form or the Trust Agreement does not defeat Plaintiffs' claim. The Court takes as true the allegation that River Front "underpaid contributions owed to the Funds." (Compl. ¶ 36.) If that is in fact the case, then it follows that River Front, like the employer in Vertex, availed itself of the benefits of the Fund and subjected itself to the rules that govern the Fund, including the Trust Agreement's requirement that employers submit their payroll and wage records for audits.

The Court finds that the allegations that Defendant has failed to comply with its contractual obligations and with the statutory requirements of ERISA are sufficient to state claims upon which relief can be granted.

### C. Counts 3 and 4 – Unpaid Benefit Fund Contributions Found in Audit; Estimated Contributions Owed for Failure to Maintain Records

In Count 3, Plaintiffs argue that if an audit reveals contributions due, Defendant must pay under the three agreements and Section 515 of ERISA. (Compl. §§ 46-48.)  In Count 4, Plaintiffs argue that if Defendant fails to produce or has not maintained books and records for the period sought to be audited, Defendant has violated Sections 107, 209(a), and 515 of ERISA. (Compl. § 52.)[3]  For the reasons set forth <u>supra</u> at Section IV.B.2, the Court also denies Defendant's motion to dismiss these two Counts.  At best, Defendant's motion to dismiss Counts 3 and 4 is premature since no audit has been undertaken and no funding or recordkeeping deficiencies have been identified.

## V.   CONCLUSION

An accompanying Order will be entered.


<u> November 16, 2016 </u>                    <u>s/ Jerome B. Simandle</u>
Date                              JEROME B. SIMANDLE
                                  Chief U.S. District Judge

---

[3] Section 515 of ERISA makes clear that if an employer who is obligated to make contributions fails to do so in violation of the collective bargaining agreement, then the Court may award the plan (1) the unpaid contributions; (2) interest on the unpaid contributions; (3) an amount equal to the greater of the (a) interest on the unpaid contributions, or (b) liquidated damages; (4) reasonable attorney's fees and costs of the action; and (5) such other legal or equitable relief as the court deems appropriate. <u>Teamsters Health and Welfare Fund of Philadelphia and Vicinity v. Dimedio Lime Co.</u>, No. 06-4519, 2007 WL 4276559, at *2 (D.N.J. Nov. 30, 2007) (citing 29 U.S.C. § 1132(g)).